Good morning, Your Honors. Good morning. When you're ready, Counsel. Thank you, Your Honors. Good morning. May it please the Court, my name is Catalina Gracia, and I represent the petitioner, David Grahamanyan. At this time, I'd like to reserve two minutes for rebuttals. All right. I'll try to help you out, but keep your eye on the clock as well. Thank you, Your Honor. Your Honor, this case raises several interesting issues. I'll start with whether the immigration judge failed to comply with his duties to develop the record, and thus resulted in a due process violation to Mr. Grahamanyan. I'll point out here that the petitioner was pro se at the time of his immigration hearing. At that time, the immigration judge only asked very general questions about his arrest for a controlled substance violation, and the petitioner argues that he was unable to demonstrate that extraordinary and compelling circumstances existed to recategorize his offense as not being a particularly serious crime. Specifically, the immigration judge failed to apply the factors that were outlined in matter of YL and AG and RSR. Instead, the immigration judge asked very simple questions about the arrest and the events surrounding the arrest. For example, the immigration judge could have asked the respondent if he was aware of the amount of controlled substance that were found in the vehicle that he was driving. The immigration judge could have asked questions about whether the petitioner knew the value, the dollar value of the controlled substance. The immigration judge could have asked if the petitioner had any weapons or had exhibited any type of violence or force at the time that he was arrested for this offense. The immigration judge could have asked the petitioner if he was near a school or a playground and thus posed a risk to juveniles at the time of the offense, and none of this was done. Only very general questions... Let me ask you this. As to peripheral involvement, I thought the petitioner testified  that he only pled guilty upon advice of counsel. So what else could the IJ have asked to demonstrate peripheral involvement given that he's saying that he really was not involved? Well, even if his involvement was just not a specific involvement and they were not his drugs as he testified, the immigration judge could have asked if he had any money on his person to prove or disprove that he was involved in the transaction. He could have asked more specific questions about the amount of drugs that were found in the car, and perhaps those answers could have enlightened the immigration judge as to Mr. Grameen's involvement. And none of these questions were asked. Just very general questions were asked, and then the immigration judge asked him if there was anything else he'd like to discuss. That's a very general question posed to a person that is not legally educated, did not have any resources, because at the time of this hearing, he was detained. So he was very limited in what he could respond to when asked if there was anything else he wanted to discuss. Do we consider the amount of money involved at all, given that the BIA relied only on the peripheral involvement factor? Well, Your Honor, I'm just going to the six factors outlined in matter of YL where the court did specify that the amount of the controlled substance was of importance, whether a modest amount of money was involved. The peripheral involvement was, of course, one of those factors, but there was also whether violence was present or not present, whether this was involved... No, I'm aware of the factors, but given that the BIA focused only on the reason of peripheral involvement, I'm trying to figure out why those other factors matter at this point, right? We're reviewing the BIA's affirmance of the IJ's decision on the ground of whether there was more that needed to be done to establish peripheral involvement, and then there's the prejudice issue on top of that. So that's why I'm trying to focus you just on that ground. Your Honor, I believe that peripheral involvement could have been... that testimony on peripheral involvement could have been further developed. Again, by asking the questions that I stated earlier, I think that they would have been relevant to peripheral involvement because if the petitioner had hundreds and hundreds of dollars in his pocket, that would lead one to believe that perhaps he was more than peripherally involved. If he knew specifics as to how much the quantity of the drug in the car, if he knew the value of the drug in the car, if he could answer those questions, that would show that he was more involved. We have a recent decision out of this court, the Hussain decision, that describes that an IJ's role, this is an adversary proceeding, and so an IJ's role is not to be an advocate for the petitioner even when they're pro se and talks about the key determination in a due process context is whether the immigration court has somehow impeded the petitioner in presenting evidence on their own behalf. How does your argument square with that case where the immigration judge in this case did ask about his involvement in the conviction at issue and then based on the answers that the petitioner gave didn't continue inquiring because as Judge Wynn said, he said, I wasn't involved in this at all, I didn't know what was happening. Well, I think that, I don't believe that the immigration judge should be or needs to be an advocate for the petitioner, however I think that asking some simple additional questions could go a long way in protecting a petitioner's due process rights and because here the risk is so grave, in this specific case a due process violation results in the worst case scenario for any immigrant and that is deportation. I think that affording a couple of minutes to more specific questioning protects petitioner's due process rights and doesn't overburden the immigration judge. Is there anything in this record to indicate that the immigration judge did something to prevent the petitioner from presenting whatever information or evidence he wanted to present? No, Your Honor, I don't believe that the immigration judge did anything to prevent the petitioner from presenting more evidence on his behalf or testimony, however the constraints that were imposed on the petitioner because of his detained status did create an additional burden and an additional reason for having some safeguards in place requiring the judge to ask more specific questions. So I think that because this specific post-state petitioner was also detained, the analysis should go a little bit further as to his due process protections. Isn't it correct that with respect to, I think, what are called the matter of why all factors, that the failure to prove even one of those factors is fatal, is it not? All six factors are mandatory, correct? That is correct, Your Honor. As I understand it, the emphasis seems to be with respect to any due process violation that your client was precluded somehow from addressing issues as to the very modest amount criteria or the merely peripheral involvement item, not even addressing the other four. And all six criteria have to be satisfied, do they not? They do, Your Honor. But given his post-state status and the fact that he has no legal education, there's no way he would know that he needs to prove or disprove any of these factors. And I think that that's why the argument here is that the immigration judge should have asked questions relating to these six factors. And that, in and of itself, may have worked against the petitioner. I'm not saying that he would have answered all of these in the affirmative and it would have created relief for him. I'm just saying that had he been asked these questions, his due process rights would have been protected. All right. I know you wanted to save a little time, counsel. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Sherry Glazer, and I represent the Attorney General in this case. I'd first like to point out that the questions that were just noted that the immigration judge apparently should have asked, none of those questions were in the appeals to the board. None of those questions were listed in the opening brief. All that was argued was that the immigration judge should have asked about the specific YL factors. The government's not aware of any case that says the immigration judge needs to ask about each factor. The immigration judge questioned the petitioner about the offense, and petitioner simply denied any involvement. And that's the information that the immigration judge used to find that he failed to rebut the presumption that his conviction was, in fact, a particularly serious crime. And as Your Honors pointed out, he does need, and as this Court recently reemphasized in Park, the first step under matter of YL is that the individual has to show that all six factors were present in his offense. And the fact that the agency focused just on peripheral involvement and the fact that he did not show that is proper, and he fails to point to anything that may have changed the outcome of this case, because even now he fails to point to anything before this Court regarding peripheral involvement that may have changed the outcome with regards to that one factor. There's simply no evidence of prejudice in this case. All of his arguments fall far short of showing any prejudice with regards to the termination or with regards to the matter of YL framework. And just to point out... Would you not agree, Counsel, if I can just... It probably would be better, in terms of whether there's any prejudice or not, it would probably be better in hindsight that the six matter of YL factors are repeated at the start of the proceeding as opposed to summarizing at the end. There may not be any prejudice. That would be the better process, would it not? Yes. I mean, that's what the Board found in this case, that he simply failed to show prejudice. And the government does not believe that he did not receive a full and fair hearing, but really the stronger argument is his arguments before the Board and in his briefs, they simply fall short of showing any prejudice whatsoever, which is required to show a due process violation. And therefore, Petitioner, he simply failed to show that his due process rights were violated under this Court's case law. And he was represented... The attorney who represented him, again, to point out, when he was granted asylum and was served with the motion, withdrew, of course, but then refiled an appearance after the immigration judge's decision and represented him on appeal to the Board for the first time, and then when the case was remanded before the immigration judge, and then on appeal to the Board for the second time, and even as represented through his counsel, made no arguments that there was some sort of evidence or some sort of testimony that he wanted to even submit to the immigration judge when the case was, in fact, on remand. You know, there's just simply no prejudice whatsoever in this case. I'm happy to answer any other questions about any other issues that Your Honors may have. It doesn't appear that we have any questions. Thank you, Counsel. Okay. Thank you. Thank you, Your Honors. Your Honors, I'd just like to point out that when the case did go back to the immigration judge, there was no additional testimony taken. The petitioner was not afforded the opportunity to provide more testimony. The immigration judge simply issued a decision based on the prior hearing and the prior testimony. Had he perhaps been given an opportunity to further develop testimony now that he was represented, we might be in a different position here, but the fact is that he wasn't afforded that opportunity, and because of that, there was still additional information that he could have provided the court that would have perhaps placed him in a better position and at the very least afforded him appropriate due process protection. And I think that the heart of this case goes to that due process protection. My argument is not that he should be afforded asylum status or that he proved his case or could have proved his case. I'm simply saying that he was denied the opportunity to fully develop his testimony and was not afforded the due process protection that are outlined in the Constitution, and this is the heart of this issue. It's taking three minutes to fully ask and develop the testimony relevant to factors that were previously decided by the court that should be asked in a case like this would go a long way in protecting not only this petitioner but all future petitioners from due process violations. And I submit. Thank you, Your Honors. All right. Thank you very much, counsel, to both sides for your argument today. The matter is submitted.
judges: NGUYEN, FORREST, Bennett